UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

UNITED STATES OF AMERICA,      )      Case No. 1:92 CR 138
                                )
        Plaintiff,              )
                                )
        vs.                     )      <u>MEMORANDUM OPINION</u>
                                )      <u>AND ORDER</u>
                                )
EUGENE N. WILSON,               )
                                )
        Defendant.              )

This case comes before the Court on Defendant, Eugene Wilson's Motion to Reduce Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A)(i). (ECF #193).  The Government filed a Response in Opposition to the motion, and Mr. Wilson filed a Reply in support.  (ECF #196, 198, 200).

**<u>FACTUAL AND PROCEDURAL HISTORY</u>**

Mr. Wilson is 64 years old.  When he was 32 years old, he was involved in selling drugs out of an apartment in Akron, Ohio.   On two occasions, he sold crack cocaine to a confidential source working for the Akron Police Department, Narcotics Unit.  During the first sale, Mr. Wilson was in possession of a shotgun.[1]  Shortly after the second sale, the police SWAT obtained

---

[1] The PSR states that the confidential informant described Mr. Wilson's firearm as a "short barrel, pump action shotgun with a pistol grip." (ECF #196-1, PageID 629 at ¶19).  However, the firearm he was charged with was a Mossberg .12 guage pistol grip shotgun, which may not qualify

a warrant and came to the apartment to arrest Mr. Wilson and search the location. During

sentencing, the Judge indicated that the evidence at trial supported the conclusion that when the

police appeared, Mr. Wilson believed he and his co-conspirators were being robbed. Trial

testimony indicated that Mr. Wilson ran into the apartment warning the others and shutting the

door. Mr. Wilson and his co-conspirators fired shots through the closed front door, striking three

officers.[2] When Mr. Wilson and the others realized that it was a police raid and not a robbery,

they put their guns down and laid down on the floor. As a result of these events, Mr. Wilson was

tried and convicted of eight federal counts including following: (1) one count of conspiracy with

intent to distribute cocaine and cocaine base, and maintaining a place for the purposes of

distributing cocaine base, in violation of 21 U.S.C. § 841 (Count 1); (2) three counts of

possession with intent to distribute cocaine base, in violation of 21 U.S.C. §841(a)(1)(Counts 3,

4, and 5); (3) two counts of being a felon in possession of a firearm or ammunition, and aiding

and abetting, in violation of 18 U.S.C. §922(g), 924(e) and 2 (Counts 6, 8, and 9); (4) and, two

counts of possession of a deadly or dangerous weapon during and in relation to any crime of

violence or drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(Counts 7 and 10). (ECF

#196, 196-1). He was sentenced to the minimum guideline range of 262 months for Counts 1, 3,

---

as a "short barrel" shotgun under §924.

[2] Mr. Wilson recounts a different version of the events in his Pre-Sentence interview. He stated that he "heard a commotion in the hallway and a knock on the door. I picked up the shotgun, went to the door and saw police. I slammed the door, through [sic] the gun down and went towards the kitchen. I heard two booms, but didn't know if they were gunshots or a battering ram. I turned and saw Hayes fire a .38 caliber pistol at the apartment door. I tried to hide in the kitchen. At this time I saw Taylor fire the shotgun. Within three minutes the police were in the apartment. I laid prone on the floor and was placed under arrest." (ECF #196-1, PageID 631 at ¶33). Nonetheless, he pled guilty to three attempted murder charges in state court.

4, 5, 6, and 8-9, and a consecutive 300 months which was the statutory minimum sentence for Counts 7 and 10.  His sentence totaled 562 months, which the minimum possible sentence at the time.[3]  (ECF #195-3).  Mr. Wilson has already served more than 384 months of incarceration on his federal crimes.

Subsequent to his sentencing on the federal charges, and in connection with the same acts and events, Mr. Wilson pled guilty in Summit County Court of Common Pleas to three charges of attempted aggravated murder.  He was sentenced to Lorain Correctional Institute for 10-25 years, with a minimum 10-year term of imprisonment for each of the three charges.  Two counts were to run concurrent with each other and concurrent with his federal sentence.  The other is to to run consecutive to his federal sentence.[4]  Therefore, upon release from federal custody, Mr. Wilson will be transported directly to state custody to serve his state sentence of 10-25 years.

The Court of Appeals for the Sixth Circuit affirmed Mr. Wilson's federal convictions, but ordered that his two convictions under §922(g) should be merged for sentencing purposes.  This holding did not affect his Sentencing Guidelines and did  not change his overall sentence.  Mr. Wilson launched several post-convictions challenges to his sentence, including a prior motion for compassionate release.  Each was denied.  (ECF #143, 145, 146, 153, 154, 156, 157, 163, 165, 168, 172, 178, 190, 193, 194).

---

[3] Because Mr. Wilson was sentenced before *United States v. Booker*, 543 U.S. 220, 226 (2005), the guidelines were treated as mandatory.  Therefore, the low end of the guidelines was the lowest permissible sentence for Counts 1, 3-6, and 8-9.

[4] The Sentencing Guidelines recommend that if a state term of imprisonment is anticipated to result from relevant conduct to the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment.  USSG §5G1.3(c).

At the time Mr. Wilson was sentenced on the §924(c) offenses, the statute stated that a defendant should receive five years imprisonment for his first violation, and twenty years each for any subsequent violations.[5] The twenty year penalty applied even if the subsequent violations occurred before the defendant was sentenced for the first violation, and even if all violations were indicted in the same case. *See*, *United States v. Davis,* 139 S. Ct. 2319, 2324, n. 1 (2019); *Deal v. United States,* 508 U.S 129, 113 S. Ct. 1993 (1993)(holding that the twenty year penalty for repeat violations can be imposed for offenses that occurred after the first violation but before a sentence on the first violation is finalized)(*superceded by statute*); *United States v. Jackson*, 995 F.3d 533 (6th Cir. 2021). Because Mr. Wilson was convicted of two separate violations, he received five years for the first, and twenty years for the second. Further, the term of imprisonment under this statute must run consecutively to "any other term of imprisonment including that imposed for the crime of violence . . . in which the firearm was used or carried." 18 U.S.C. §924(c)(1). Therefore, he was subject to a statutory minimum sentence of 300 months (25 years) for his two convictions under 18 U.S.C. §924(c), and that sentence was required to run consecutively to the sentence he received for the other seven counts. (ECF #96).

Well over twenty years later, the legislature enacted the First Step Act of 2018. Section 403(a) of the First Step Act modified 18 U.S.C. §924(c), changing the penalties. Under the current version of the law, Mr. Wilson would have been subject to the penalties in subsection §924(c)(1)(A)(i) on count 7. This subsection dictates a term of imprisonment of "not less than 5 years" if the defendant uses, or carries a firearm during or in relation to a crime of violence or

---

[5] Generally courts should look to the law in place at the time of the original sentencing. *See, United States v. Jackson*, 995 F.3d 522 (6th Cir. 2021)

drug trafficking crime, or possesses a gun in furtherance of such a crime.  That sentence must still be served consecutive to the time served for the underlying drug trafficking crime(s).  §924(c)(1)(D)(ii).  However, there is no longer an enhanced penalty for repeat violations that occur before conviction for prior offense conduct has become final.  §924(c)(1)(C).  Therefore, if Mr. Wilson were to be sentenced today for the same offense conduct, he could have been subject to a combined sentence of anywhere from 10-17 years, depending on whether the government proved he had brandished and/or discharged the firearm at issue.[6]  Therefore, This would mean that he could have received a consecutive sentence of 120-204  months on his two violations of §924(c) combined,  rather than the statutory minimum 300 months (25 years) in place at the time he was sentenced.  Under either version of the statute,  he would also have to serve a consecutive term of imprisonment for his other seven counts of conviction.  Under the current penalty structure, assuming he were to receive the same guideline sentence of 262 months[7] on his other convictions, and the statutory minimum 180 months on the §924(c) counts, he would have had to serve a total of 382-466 months.  As of the date of his motion, he has served over 384 months actual time.  He would likely have credit for more if good time credits are considered.

In Mr. Wilson's previous requests for a sentence reduction under 18 U.S.C, §3582(c)(1)(A)(i) he cited the disparity in sentences caused by these non-retroactive changes to

---

[6]  The sentence increases from a minimum of five years to a minimum of ten years if the firearm is discharged.  18 U.S.C. §924(c)(1)(A)(i),(iii).  He could also receive an additional two years if he brandished the weapon during the first offense.  18 U.S.C. §924(c)(1)(A)(ii).

[7] Two hundred and sixty-two months was the low end of the applicable Sentencing Guideline range at the time of his sentencing.  (ECF #196-1, #195-3).  There is no statutory minimum sentence for Counts 1, 3, 5, and 9.  The PSR does not address Counts 4, and 6 with regard to sentencing range.

§924(c) as the basis for arguing that "extraordinary and compelling reasons" existed to support compassionate release. At that time, the Court found that non-retroactive changes could not support a finding of extraordinary and compelling circumstances warranting relief. That decision was supported by multiple Sixth Circuit decisions that barred district courts from considering non-retroactive sentencing changes when determining whether a defendant had shown extraordinary and compelling circumstances for relief under 18 U.S.C. §3582. *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021)(affirming *United States v. Tomes*, 990 F3d 500 (6th Cr. 2021))); see also, *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022)(en banc); *United States v. Hunter*, 12 F.4th 555 (2021). Defendant now argues that the Sixth Circuit cases barring consideration of non-retroactive sentencing changes have been superceded by the November 1, 2023 amendments to USSG §1B1.13. He seeks a reduction of sentence that would place him in parity with defendants who are sentenced today for the same offenses. Specifically he seeks to reduce his sentence to 384 months, or time served.

## **ANALYSIS**

A. Retroactivity of Mandatory Minimum Sentences

As mentioned above, subsequent to Mr. Wilson's sentencing, Congress enacted section 403(a) of the First Step Act, which modified 18 U.S.C. §924(c)(1)(A). The modifications changed the penalty structure for §924(c), effectively reducing the mandatory minimum for Mr. Wilson's §924 offenses from 300 months to 120-204 months, depending on whether the government has proven that the firearm was brandished or discharged in connection with each offense. 18 U.S.C. §924(c)(1)(A)(i-iii). However, despite having the opportunity to do so,

Congress did not make the relevant revisions to §924(c) retroactive for Mr. Wilson's circumstances.

"Federal sentencing law presumes that changes in sentencing law are not retroactive." *United States v. McCall*, 56 F.4th 1048, 1055 (6th Cir. 2022)(citing *United States v. McKinnie*, 24 F.4th 583, 587 (6th Cir. 2022)); *see also, Dorsey v. United States*, 567 U.S. 260, 280, 132 S. Ct. 2321 (2012)("ordinary practice is to apply new penalties to defendants not yet sentenced."). In fact, Congress has codified this presumption, enacting a statute to make it absolutely clear that legislation is not retroactive unless Congress expressly provides for retroactive application in the legislation.

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability[8] incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. §109. The term "repeal" in §109 includes statutory amendments or revisions that lower the penalties for criminal offenses. *See,e.g., Dorsey v. United States,* 567 U.S. 260, 272 (2012); *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 659 (1974).[9] "We assume that

---

[8] The terms "penalty," "forfeiture," and "liability" apply to criminal offenses. *See, United States v. Reisinger*, 128 U.S. 398, 9 S. Ct. 99 (1888); *Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 94 S. Ct. 2532 (1974). The §109 savings clause applies whether the revisions relax or tighten the penalties at issue. See, e.g., *Warden, 417 U.S. 653; United States v. Blue Sea Line*, 553 F.2d 445 (5th Cir. 1977).

[9] The United States Supreme Court has held that despite the clear use of the term "expressly provide," in the savings statute, Congress itself may repeal the earlier statute, exempt the current statute from the general application of an earlier statute, modify the earlier statute, or apply the earlier statute with modifications, and may express this intent expressly or by necessary implication. *Dorsey*, 567 U.S. at 273-274.

7

Congress is aware of existing law when it passes legislation." *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 422, 129 S. Ct. 2561(2009).

The First Step Act §403(b) clearly considered the issue of retroactivity because it did expressly provide that the revisions to §924(c) should be applied retroactively to defendants who had violated the statute before the revisions took effect but had not yet been sentenced by the date of enactment. *Id.* The First Step Act chose not to provide, expressly or by necessary implication, that it should apply retroactively to defendants like Mr. Wilson who were sentenced prior to the enactment of the revisions. "[W]e must assume that Congress did *not* intend" for the First Step Act to apply retroactively in a Defendant's case "unless they clearly indicated to the contrary." *United States v. Carpenter*, 80 F.4th 790, 791 (6th Cir. 2023)(citing *United States v. Hughes*, 733 F.3d 642, 644 (6th Cir. 2013)(emphasis in the original). Therefore, the statutory amendments to §924(c) do not apply retroactively in his case. 1 U.S.C. § 109. *See, United States v. Jackson*, 995 F.3d 522, 524-25 (6th Cir. 2021).


B. Compassionate Release

A sentence of imprisonment "constitutes a final judgment," and a district court is generally prohibited from "modify[ing] it once it has been imposed." 18 U.S.C. §3582(b)-(c); *McCall* at 1055; *see also, Dillon v. United States*, 560 U.S. 817, 824, 130 S. Ct. 2683 (2010). The only exceptions to this rule are specifically delineated within the statute itself. 18 U.S.C. §3582(b)-(c). One of the exceptions authorized by 18 U.S.C. §3582(c)(1)(A), is often referred to "Compassionate Release."

Prior to December of 2018, a defendant could not directly petition the court for a reduction of sentence under 18 U.S.C. §3582(c)(1)(A).   With the passing of the First Step Act, Congress authorized defendants to file their own motion petitioning the court for a modification of their term of imprisonment once they had "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or [after] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. §3582(c)(1)(A). Following the passage of the First Step Act, the Sixth Circuit had held that the policy statements set forth in USSG. §1B1.13 were not "applicable" policy statements that a court must consider when deciding a compassionate release motion brought directly by an inmate.  *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021); *United States v. Jones,* 980 F.3d 1098, 1109 (6th Cir. 2020).   "Until the Sentencing Commission updates §1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a §3582(c)(1)(A) motion." *Jones* at 1109.

On November 1, 2023, the Sentencing Commission updated the policy statement in USSG. §1B1.13, to address the changes that had been made to 18 U.S.C. §3582(c)(1)(A)(i) through the First Step Act.   The amendment expanded the policy statement, and clarified that it should be applied both to motions filed by the BOP and to motions filed directly by defendants. "Among other things, the amendment extends the applicability of the policy statement to defendant-filed motions; expands the list of specified extraordinary and compelling reasons that can warrant sentence reductions; retains the existing 'other reasons' catchall; provides specific

9

guidance with regard to the permissible consideration of changes in the law; and responds to case law that developed after the enactment of the First Step Act." See, USSG Supplement to App. C at 205 (Nov. 1, 2023) .   In order to grant relief under 18 U.S.C. §3582(c)(1)(A), whether addressing a request by the BOP or made directly by an inmate, the Court must now find that the reduction "is consistent with applicable policy statements issued by the Sentencing Commission," in addition to finding that there are extraordinary and compelling reasons warranting relief, and considering the §3553(a) factors.

Mr. Wilson is asking this Court to apply one of the USSC's revised policy statements as it considers his motion for Compassionate Release.  Section 1B1.13 now reads, in relevant part:

(a)     Upon motion of the Director of the Bureau of Prisons or the defendant pursuant to 18 U.S.C. §3582(c)(1)(A), the court may reduce a term of imprisonment... if, after considering the factors set forth in 18 U.S.C. §3553(a), to the extent they are applicable, the court determines that

(1)     (A)     extraordinary and compelling reasons warrant the reduction; or

(B)     the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. §3559(c) for the offense or offenses for which the defendant is imprisoned;

(2)     the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(G); and

(3)     the reduction is consistent with this policy statement.

(b)     EXTRAORDINARY AND COMPELLING REASONS – Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
        . . .

10

(6)     UNUSUALLY LONG SENTENCE – If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c)     LIMITATION ON CHANGES IN LAW – Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement.  However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §1B1.13 (Nov. 1, 2023).

Taking the revised §1B1.3 at face value, Mr. Wilson would qualify for relief under 18 U.S.C. §3582(c)(1)(A).  Because  more than thirty days has passed since he submitted a request for compassionate release to the warden at his facility, he satisfies the jurisdictional threshhold.  (ECF #137-2).  *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020).  As defined by USSG §1B1.13(b)(6), his circumstances are extraordinary and compelling.   He received an unusually long sentence: in excess of forty-six years.  He has served more 32 years of his sentence, well beyond the ten years required by the policy statement.  The law governing his offense conduct has changed such that, if he were to be sentenced for the same conduct today, his sentence could be as low as 31 years, 10 months - 38 years, 10 months.  He has already served more than the low

11

end of this time range, and is still facing more than fourteen additional years of imprisonment. This represents a gross disparity between the sentence he received and the sentence he would receive if he had been sentenced under the revised USSG policy statement.[10]    A balancing of the §3553(a) factors could also favor a reduced sentence. Although his offenses were serious, he was young at the time of their commission and is now beyond the age where there a heightened risk of recidivism is expected. He has a significant record of positive conduct in prison and has demonstrated extraordinary efforts toward rehabilitation. Mr. Wilson could still be required to serve some federal time, depending on the specific provision of §924(c) that is applied. Additionally, will still have to serve a state sentence of 10-25 years upon release from federal prison, so will not pose an immediate danger to the community. In addition, his sentence might be disproportionate when compared to others with similar backgrounds and similar offense conduct, including his co-conspirators.    Although the Court makes no final finding on the §3553 factors, it is possible that they could support a finding that Mr. Wilson could be a valid candidate for release under 18 U.S.C. §3582(c)(1)(A)(i).

However, to grant the requested relief, the Court would have to override the statutory sentencing structure in place at the time of his sentencing. That statute established a mandatory minimum sentence for violations of 18 U.S.C. §924(c), and provided for stacking penalties. Applying §1B1.13(b)(6) to grant the relief requested, would require the Court to either disregard

---

[10] Considering the disparity between the previous sentence and the sentence that would be imposed under subsequent revisions of the applicable law when weighing the §3553 factors at re-sentencing is legally distinct from the question of whether non-retroactive changes to the law can be justify a sentence modification to begin with. *See McCall*, 56 F.4th at 1061-62 (discussing *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022)( holding that a district court may consider intervening changes of law or fact when deciding whether and how much to reduce a defendant's sentence in context of re-sentencings for crack-cocaine offenses under First Step Act §404(b)).

the mandatory minimum entirely, or to retroactively apply a penalty structure that Congress determined should not be retroactive.  It would also mean disregarding the holding in *McCall*, a Sixth Circuit opinion that is binding on this Court.  *McCall*, 56 F.4th 1048.  The Court is not convinced that the USSC had the authority to override Congress' decision to deny retroactive application of the revised §924(c) to defendants in Mr. Wilson's circumstances,[11] or to supercede the Sixth Circuit's decision in *McCall*.

C.  Authority of the Sentencing Commission

The Legislature created the United States Sentencing Commission ("USSC") under 28 U.S.C., Chapter 58, §991 as an "independent commission in the judicial branch of the United States." 28 U.S.C. §991(a).  Congress is permitted to delegate rule-making authority to a body within the judiciary so long as the rules are "not inconsistent with the statutes or constitution of the United States." *Sibbach v. Wilson & Co.*, 312 U.S. 1, 9-10 (1941); *see also, Mistretta v. United States*, 488 U.S. 361, 387 (1989).  Though the Commission is posited in the judicial branch, the Guidelines promulgated by the Commission make political and substantive decisions. *United States v. Booker*, 543 U.S. 220, 243 (2005).  The United States Supreme Court has held that this does not raise a separation of powers concern because the USSC is fully accountable to Congress and Congress can revoke or amend any of the Guidelines as it sees fit. *Mistretta*, 488 U.S. at 394.  Further, the Guidelines do not "involve a degree of political authority inappropriate

---

[11] Refusing to apply such an significant change to statutory minimum, based solely on the timing of a person's offenses, may seem unfair, but Sixth Circuit has held that enforcing 1 U.S.C. §109 and denying application of newly revised non-retroactive lower sentencing laws does not violate a defendant's right to due process or equal protection. *United States v. Turner*, 456 Fed. Appx. 545, 548 (6th Cir. 2012).

for a nonpolitical Branch" because "they do not bind or regulate the primary conduct of the public or vest in the Judicial Branch the legislative responsibility for establishing minimum and maximum penalties for every crime." *Mistretta,* 488 U.S. at 396. Rather, the Commission is tasked with performing "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Id.* at 388.

One of the governing purposes of the USSC is to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct" 28 U.S.C. §991(b)(1)(B); 28 U.S.C. §994(f). To accomplish this goal, the USSC is tasked with promulgating Guidelines for a sentencing court to use when determining what sentence to impose in a criminal case. 28 U.S.C. §994(a)(1). The Commission is also authorized to promulgate general policy statements regarding the application of the Guidelines including the appropriate use of the sentence modification provisions in 18 U.S.C. §3582(c); 28 U.S.C. §994(a)(2)(C). These Guidelines and general policy statements must be "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. §994(a); *see also,* 28 U.S.C. §994(b)(1).

When assessing whether the Commission is acting within the scope of its delegated authority, courts follow basic administrative law concepts, regardless of the Commission's placement within the judicial branch. *See, Stinson,* 508 U.S. at 45. Like any agency, however, it does not have the authority to modify or enact statutes of its own accord. *See, Neal,* 516 U.S. at 290. "Only the people's elected representatives in Congress have the power to write new federal criminal laws." *Davis,* 139 S. Ct. at 2324. This extends to the establishment of criminal punishments. The Commission's interpretation of the Guidelines is not given weight if it

violates the Constitution or a federal statute, or if it is plainly erroneous or inconsistent with the Guideline. *Stinson* at 45; *see also*, *Bowles*, 325 U.S. 414.

The Commission has a continuing duty to review and modify Guidelines based on new information. 28 U.S.C. §994(o). It may also "make recommendations to Congress concerning modification or enactment of statutes relating to sentencing, penal, and correctional matters that the Commission finds to be necessary and advisable to carry out an effective, humane and rational sentencing policy." 28 U.S.C. § 995(a)(20).[12]

Specifically relevant to this case, Congress directed the USSC to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. " 28 U.S.C. §994(t). Congress did not define what qualifies as an "extraordinary and compelling" reason that would warrant a sentence reduction. 18 U.S.C. §3582(c)(1)(A)(i). The only explicit restriction Congress included in the authorizing statute was that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

### D. Validity of USSG §1B1.13(b)(6)

In 2022, pursuant to 28 U.S.C. §994(t), the USSC promulgated amendments to the Sentencing Guidelines Manual including modifications to the policy statement set forth in

---

[12] The Commission has recognized its inability to act on its own to override Congressional sentencing decisions and advocated for changes when it believes Congress' decisions were unjustified or did not advance the goals of proportionality and uniformity. For example, the USSC asked Congress to change legislation affecting crack and powder cocaine sentences for years, but did not take it upon themselves to override Congressional decisions in the meantime. *See generally, Dorsey v. United States*, 567 U.S. at 262-263(outlining the legislative history of the Fair Sentencing Act)

Section 1B1.13. 88 Fed. Reg. 28,254, 28,254-28, 281 (May 3, 2023). The change that is most relevant to Mr. Wilson is sub-part (b)(6), which purports to allow a court, under certain circumstances, to consider changes in the law when determining whether "extraordinary and compelling" reasons warrant a sentence reduction under 18 U.S.C. §3582(c)(1)(A).[13]

1. <u>Applicability of the Sixth Circuit's Decision in *McCall*</u>

The policy statement does not differentiate between retroactive and non-retroactive changes in the law. However, if a change in law is retroactive, it would be applied without need for relief under 18 U.S.C. §3582(c)(1)(A). Therefore, the policy statement necessarily refers to consideration of case law and legislation that was not made retroactive by its authors.[14] This puts the Commission's policy statement at odds with *United States v. McCall*, 56 F.4th 1048. In *McCall*, the Sixth Circuit concluded, based on the plain language of 18 U.S.C. §3582(c)(1)(A), that "[n]onretroactive legal developments, considered alone or together with other factors, cannot amount to an "extraordinary and compelling reason" for a sentence reduction." *McCall* at 1065-1066. The holding was unambiguous and emphatic: "Nonretroactive legal developments do not factor into the extraordinary and compelling analysis. Full stop." *Id.* at 1065.

The *McCall* Court found that the phrase "extraordinary and compelling," is unambiguous, holding that "there is nothing extraordinary about the ordinary operation of our legal system,

---

[13] Changes in the law may only be considered if they produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. The defendant must also have received an unusually long sentence, and must have served at least ten years of the term of imprisonment.

[14] While purporting to allow a finding of extraordinary and compelling reasons based on non-retroactive changes made through case law or acts of Congress, the USSC explicitly excludes its own non-retroactive amendments to the Guidelines Manual from being considered an extraordinary and compelling reason for sentence reduction. §1B1.13(b)(6).

16

which assumes new statutes and caselaw have no retroactive effect." *Id.* at 1063.  It also analyzed the authorizing statute, 28 U.S.C. §994(t), determining that the authorization to describe criteria for determining "extraordinary and compelling reason" and to list examples, did not explicitly or implicitly include authorization to include non-retroactive changes among the "extraordinary and compelling reasons" that could justify relief.  *McCall*, 56 F.4th at 1060-1061, 1063-1066.

Although the *McCall* opinion unabashedly declares that the statutory phrase "extraordinary and compelling" is unambiguous, and does not leave room to consider non-retroactive changes to the law, it notes that Congress has delegated the task of describing "what should be considered extraordinary and compelling reasons" to the Commission.  *McCall*, 56 F.4th at fn 3.  It also declined to resolve the question of whether an inconsistent interpretation of the statute, promulgated by a new policy statement, would override the Court's opinion.  *Id. McCall's* citation to *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982, and *United States v. Home Concrete & Supply, LLC*, 566 U.S. 478 (2012) suggests an answer, however.  In *Nat'l Cable*, the United States Supreme Court held that a "court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms fo the statute and thus leaves no room for agency discretion." *Nat'l Cable at 982.  McCall* very clearly held that the term "extraordinary" in 18 U.S.C. §3583 (c)(1)(A)(i) is unambiguous, thereby leaving "no gap for the agency to fill." [15] *Id.*; *McCall* at1062-1063.   The

---

[15] *McCall's* analysis focused primarily on the meaning of "extraordinary," with only passing discussion about the "compelling" requirement. The Court did state that "[t]here is little compelling about the duration of a lawfully imposed sentence."  *McCall* at 1056. This statement must be taken within context of the entire discussion in *McCall*.  If it were

holding in *McCall*, therefore, "displaces [the] conflicting agency construction." *Nat'l Cable* at

983.[16] Further, even if the statute were ambiguous, *Chevron* dictates that the agency's

interpretation must be a "permissible construction of the statute." *Chevron, U.S.A. Inc. v.*

*Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984). The entire opinion in

*McCall* sets about explaining why describing non-retroactive changes in the law as

"extraordinary and compelling" is an impermissible construction of that term.[17]

     Sixth Circuit law is binding on this Court. The Sixth Circuit has held that the phrase

"extraordinary," as used in 18 U.S.C. §3582(c)(1)(A)(i) is unambiguous, and the requirement of

having an "extraordinary and compelling reason" for a sentence reduction cannot be satisfied by

non-retroactive changes in the law. Agency law dictates that if a court holds that statutory

language is unambiguous, an agency is precluded from providing a conflicting interpretation of

that language. *Neal*, 516 U.S. at 290, 294 (the Commission does not have the authority "to

override the statute as [the court of appeals] has construed it.").[18] Because the Commission's

_____

applied strictly and literally, there would be no grounds for relief under 18 U.S.C. §3582(c)(1)(A) anytime a defendant was serving a lawfully imposed sentence.

[16] Query whether by declaring the statutory language unambiguous, *McCall* calls into question the validity of the Commission's interpretation of "extraordinary and compelling" throughout §1B1.13(b).

[17] The Government notes that the Supreme Court has granted certiorari in *Loper Bright Enterprises v. Raimondo*, No. 22-451, to consider whether the Court's decision in *Chevron* should be overruled. That decision could alter the degree of deference given to agencies who have been granted implicit interpretive authority.

[18] Before the adoption of §1B1.13(b)(6), there was a circuit split regarding whether non-retroactive changes in the law could constitute "extraordinary and compelling reasons" for a sentence reduction. Several defendants sought writs of certiorari with the Supreme Court. At that time, the Government opposed certiorari arguing that the issue should be left to the Sentencing Commission to resolve. *See, United States v. Brown*, 2024 U.S. Dist. LEXIS 18673, *16(S.D. Ohio 2024)(collecting cases); *see also*, U.S. SENTENCING COMMISSION, Amendments to the Sentencing

18

inclusion of non-retroactive changes in the law conflicts with the *McCall* holding, this Court is required to treat the agency's interpretation as invalid.[19]  Therefore, Mr. Wilson cannot rely on the non-retroactive changes to sentencing structure in 18 U.C.S. §924(c) to establish extraordinary and compelling reasons for a reduction in sentence, despite its inclusion in USSG §1B1.13(b)(6).

    2. <u>Scope of Delegated Authority</u>

    If *McCall* did not preclude application of USSG §1B1.13(b)(6) within this Circuit, and the statutory language was ambiguous enough to leave room for the Commission's interpretation, we would still have to consider whether the policy statement falls within the Commission's authority, and whether the Commission's interpretation is permissible.  "[A] court should not reflexively defer to an agency's interpretation. *See United States v. Riccardi*, 989 F.3d 476 (6[th]

---

Guidelines at 11 (2023)(collecting cases).  The Defendant argues that we should hold the Government to its prior position, and accept that the Commission has the authority to determine this question.  The Court is not bound by the Government's prior position and finds that the current binding case law suggests that the Government was wrong.  If there is a split on whether language within §3582 is unambiguous, the agency cannot make that determination.  The legislature could answer the question through clarifying language in the statue, the Supreme Court could determine which set of circuits correctly classified the language, or the Commission could make recommendations to the legislature to seek a statutory change.  The Commission, however, does not have the authority to interpret unambiguous statutory language, or to override a courts' determination that the language is unambiguous.  If the Commission were able to declare statutory language ambiguous, it could expand its own power.  An agency may not be the arbitrator of its own power. *See Batterton v. Francis*, 432 U.S. 416, 425 (1977). .  "To what purpose are powers limited . . . if these limits, may, at any time, be passed by those intended to be restrained?" *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 178 L. Ed. 60 (1803).

[19] The Court has found only two cases within the Sixth Circuit that have applied §1B1.13(b)(6) and granted relief.  Those courts noted the conflict with *McCall* but proceeded on an assumption that the Commissions' policy statement supercedes that opinion. *See, United States v. Bricker*, 2024 U.S. Dist. LEXIS 37862 (N.D. Ohio 2024); *Brown*, 2024 U.S. Dist. LEXIS 18763. Compare, *United States v. Mann*, 2024 U.S. Dist. LEXIS 27332 (acknowledging the conflict between the policy statement and *McCall*, but not deciding the issue because the defendant's motion failed under either scenario).

Cir. 2021)(citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019). When "Congress entrusts to the [Commission], rather than the courts, the primary responsibility for interpreting the statutory terms," courts may not ignore the agency determination "simply because it would have interpreted the statute in a different manner." *See Batterton v. Francis*, 432 U.S. 416, 425 (1977). However, though important, agency interpretations of statutory terms are not controlling. *Id.* Courts are not required to give effect to an interpretive statement, and should not enforce any regulation or policy statement that exceeds the statutory authority of the agency. *Id.* at 426.

Agencies are tasked with filling in gaps not otherwise addressed by Congress. They cannot promulgate rules that exceed that gap. *Mayo Found. For Med. Educ. & Research v. United States*, 562 U.S. 44, 53058 (2011); *Batterton*, 432 U.S. at 428. The decision not to apply legislative amendments retroactively is a deliberate choice made by Congress and is part of the governing federal law. The USSC was authorized to write a policy statement describing specific examples of what it considers to be extraordinary and compelling reasons justifying relief under 18 U.S.C. §3582(c)(1)(A). It was not authorized to invalidate or amend prior legislative directives. The authorizing legislation requires the USSC to ensure that its policy statements comply with already existing federal law. *See generally*, *Koons v. United States*, 584 U.S. 700, 707 (2018)(USSG "policy statements cannot make a defendant eligible [for re-sentencing] when [a statute] makes him ineligible"). Existing federal law clearly precludes retroactive application of changes to the §924(c) sentencing structure.

Mr. Wilson argues that because the authorizing statute did not specifically exclude consideration of non-retroactive laws, the court should assume Congress intended to permit the Commission to include them as an example of an extraordinary and compelling reason

warranting a sentence reduction.   This argument essentially contends that anything not explicitly excluded by 28 U.S.C. §994(t) was authorized to be included in the Commission's policy statement.  Such an inference is not supported by the context of the legislation.

It is unrealistic to think that Congress would have delineated every circumstance that does not rise to the level of an "extraordinary and compelling reason" warranting a sentence reduction. Congress needed to explicitly exclude rehabilitation from consideration because nothing otherwise precluded its inclusion.  There were no existing statutes or other Congressional directives that would have prevented the Commission from including extraordinary efforts at rehabilitation in its descriptions of what constitutes extraordinary and compelling reason for relief.  Therefore, a specific exemption was necessary to communicate the legislature's intent to exclude that factor. On the contrary, Congress had already made a determination that the changes to §924(c) should not be applied retroactively. In addition, Congress had previously enacted a statute that prohibits retroactive application of changes to sentencing laws absent express authorization by Congress.  1 U.S.C. §109.  Further, the authorizing statute for the USSC requires it to act consistently with existing federal statutes.  28 U.S.C. §994(a).  In this context, there is no reason to presume that Congressional silence on the issue implied an authorization for the USSC to override Congress' own retroactivity determinations.[20]

---

[20]   Some have argued that Congress implicitly adopts the Commission's guidance by not taking action to amend or eliminate it prior to its effective date. Before any Guideline amendments go into effect, the USSC must provide them, along with a statement of reasons, to Congress.  The legislature then has at least 180 days to change or disapprove the amendment or modification through an Act of Congress.  28 U.S.C. §944 (p).  Absent an Act of Congress, the amendment or modification will take effect no sooner than 180 days after it is submitted, and no later than November 1, of the year in which it is submitted. *Id.;* USSG Rule 4.1.  Hoever, this "look at" provision for the Guidelines does not apply to policy statements issued by the Commission. *See generally, United States v. Riccardi,* 989 F.3d 476 (6th Cir. 2021)(only the Guidelines go through notice-and-comment rule making).

"'Drawing meaning from silence is particularly inappropriate' where 'Congress has shown that it knows how to direct sentencing practices in express terms.'" *Dean v. United States*, 581 U.S. 62, 70 (2017)(*quoting Kimbrough v. United States*, 552 U.S. 85, 103, 128 S.Ct. 558 (2007)).  Congress has clearly shown that it knows how to expressly authorize the USSC to override a existing legislative directive, when it intends to do so.   For example, Congress expressly authorized the USSC to override legislation establishing a mandatory minimum sentence, in order to reward a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."  28 U.S.C. § 994(n); *see also*, 18 U.S.C. §3553(e)("the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance. . . in accordance with the guidelines and policy statements issued by the Sentencing Commission."); USSG §5K1.1.[21]  "When Congress wants a change in sentencing law to have retroactive effect, it explicitly says so."  *McCall,* 56 F.4th at 1056.

This does not necessarily mean that the policy statement is invalid.  The policy statement could be construed one of two ways: (1) to allow courts to apply non-retroactive changes to the sentencing laws retroactively under the guise of compassionate release;  or, (2) to allow courts to consider an extraordinary degree of disparity created by non-retroactive changes, without actually

---

"Amendments to policy statements and commentary may be promulgated and put into effect at any time."  USSG Rule 4.1.  Although they may be included in a submission to Congress, under the Commission's rule it is not required.  USSG Rule 4.1.

[21] The only other statutorily established limitation on the applicability of statutory minimum sentences is found in 18 U.S.§3553(f), with regard to certain specific circumstances that may exist when sentencing a defendant for a controlled substances offense.  It does not apply in this case.

applying the change retroactively.[22] The first construction exceeds the Commissions' authority, while the second interpretation would give meaning to the policy statement without straining the limits of the Commission's delegated authority.

### a. Applying Non-Retroactive Changes Retroactively

In this case, Mr. Wilson was subject to an already existing federal law setting a statutory mandatory minimum sentence for his §924(c) offenses. When Congress changed the statutory minimum for those offenses, it intentionally determined that the changes should not be retroactive. The presumption against retroactive application of changes to sentencing laws, absent an express declaration to the contrary, is established federal law. *United States v. Carpenter*, 80 F.4th 790, 791 (6th Cir. 2023)(citing *United States v. Hughes*, 733 F.3d 642, 644 (6th Cir. 2013)(emphasis in the original); 1 U.S.C. §109; *see also, Dorsey*, 567 U.S. at 280 ("ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced.").

In order to to apply §1B1.13(b)(6) to eliminate the disparity caused by the non-retroactive changes to §924(c)'s statutory minimum sentence, the Court would have to apply those changes retroactively. Applying §1B1.13(b)(6) in this manner would usurp Congress' power to determine

---

[22] The second scenario could arise, for example, if the defendant was sentenced above the mandatory minimum for an offense and Congress later reduced the mandatory minimum sentence applicable to that offense by means of a non-retroactive amendment. The court might then be able to find that extraordinary and compelling reason exists to reduce his sentence, but the sentence would not be reduced below the mandatory minimum that was in place at the time of his original sentencing. The Defendant could then gain a benefit from §1B1.13(b)(6), without actually applying a change that Congress had not intended to apply retroactively. Similarly, the disparity caused by a non-retroactive change to the calculation of criminal history categories may be considered as a reason to reduce a sentence that was in the mid to high range of the Guidelines to the lowest sentence in the Guidelines. This would allow consideration of the change, but would not apply the non-retroactive change to alter the defendant's criminal history, or resulting Guideline range.

which sentencing laws should be applied retroactively, and would effectively infringe upon Congress' "responsibility for establishing minimum and maximum penalties for every crime." *Mistretta* at 396. "Defendants cannot use compassionate release as an 'end run around Congress'" or other court's retroactivity decisions." *McCall*, 56 F.4th at 1059 (citing *United States v. Tomes*, 990 F.3d at 505). The United States Supreme Court has explicitly stated that sentencing statutes "trump[] the Guidelines." *Dorsey v. United States*, 567 U.S. at 266. The same principle should hold true for Congress' determination that a sentencing statute is not to be applied retroactively. Holding otherwise would violate the separation of powers, and would authorize the Commission to give the judiciary the power to apply non-retroactive changes on a case-by-case basis, creating inconsistency and unpredictability in the application of those changes. [23]

The USSC has the power to make guidelines for courts to consider, identifying appropriate considerations and creating more uniform methods of sentencing within the mandatory ranges established by Congress. The Commission may also make recommendations to Congress to either make §924(c) retroactive, or to specifically define conditions under which the Guidelines may permit the application of non-retroactive legislative changes in the context of compassionate release if it believes that this is "necessary and advisable to carry out an effective,

---

[23] As noted in section (b) *infra*, failure to retroactively apply significant changes in sentencing laws virtually guarantees disparity in the sentencing structure of similarly situated defendants. However, it is the legislature's prerogative to weigh this harm against the consequences of retroactive application and make a policy determination that can be applied consistently within defined time periods. Courts do not "have license to question [legislative decisions] on policy grounds." *Tyler v. Cain*, 533 U.S. 656, 663 n. 5(2001)(citing *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992). When left to the Courts, the determination has the potential to be applied more inconsistently and arbitrarily

humane and rational sentencing policy." 28 U.S.C. § 995(a)(20).   It cannot, however, simply

disregard Congress' prior determination that the changes should not be applied retroactively.[24]

See generally, *United States v. LaBonte*, 520 U.S. 751, 757 (1997)(the Commission "must bow to

the specific directives of Congress").  This means that the USSC cannot use policy statement

§1B1.13(b)(6) to authorize courts to apply a non-retroactive change in the law simply by defining

it as an "extraordinary and compelling reason" for a sentence reduction under 18 U.S.C.

§3582(c)(1)(A).

### b. <u>Considering Disparity without Applying Non-retroactive Changes</u>

The Government argues that considering non-retroactive changes in the law to past

offenders under the compassionate release statute would increase inconsistencies, create

indeterminate sentences, and result in greater disparity because judges would be deciding when

to apply which statutory structure on a case-by-case basis.  It is true that allowing judges to

---

[24]The Defendant cites two district court opinions as examples of courts that have held §1B1.13(b)(6) to allow non-retroactive changes in the law to form the basis of a finding of extraordinary and compelling reasons for a sentencing reduction.  None of these is binding on this Court, and none persuade the Court that the USSC is authorized to permit courts to apply non-retroactive changes in the law retroactively.

In *United States v. Brown*, 2024 U.S. Dist. LEXIS 18673, the court discussed §1B1.13(b)(6), but ended up analyzing the case under (b)(5) instead.  The court made "explicit that, for the purposes of its §1B1.13(b)(5) analysis. . .it is not considering the non-retroactive changes to the way in which §924(c) violations are sentenced."  Therefore, it does not apply non-retroactive changes retroactively.  It does, however, grant a reduction that brings the defendant's sentence below the mandatory minimum sentence under both the old and new versions of the sentencing laws. For the reasons discussed herein, this violates the separation of powers as the legislature is tasked with defining crimes and determining minimum and maximum penalties, if any, for each. *See, Mistretta* at 396.

The court in *United States v. Allen*, 2024 U.S. Dist. LEXIS 28049 was bound by prior holdings in the Eleventh Circuit which, even before the adoption of USSG §1B1.13(b)(6) permitted consideration of non-retroactive changes in the law when determining whether extraordinary and compelling reasons exist for a sentence reduction. We are bound by the Sixth Circuit, which, on the contrary, does not permit consideration of non-retroactive changes, unless expressly provided for by Congress.

correct sentences on a case-by-case basis by way of the compassionate release statute would result in differential treatment of individuals sentenced under the same laws during the same time range.

It cannot be ignored, however, that Congress' decision to withhold retroactive application of extreme changes to the mandatory minimum sentence structure under §924(c) also creates a significant disparity and calls into question the proportionality of the sentences imposed under the harsher sentencing structure. If a 120-204 month sentence is now considered to be sufficient but not greater than necessary to accomplish the goals of sentencing, it does seem extraordinary to allow past offenders to serve 300 months for the same offenses, and makes a compelling case for a reduction, assuming all other criteria are met. If the goal is to prevent "inevitable disparity" that is "not justified by differences among offenses or offenders," and to eliminate "unwarranted sentencing disparity," continuing to enforce drastically harsher mandatory minimum penalties against one group of offenders, based solely on the date they committed the offense, hardly seems to advance that goal. (S. Rep. No. 98-225, at 38, 41, 45, 52(1983); *see also*, USSG Chpt. 1 Part A (3)(goals of the Guidelines are "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses by similar offenders... proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity).

Mr. Wilson was sentenced to a total of 562 months in prison for committing drug trafficking crimes while possessing/brandishing/discharging a firearm. If he were to be sentenced today for the same exact acts he would have received a sentence of 382-466 months. His sentence included 300 months for his §924(c) offenses, which was the statutory minimum

sentence at the time. Therefore, any reduction to that portion of his sentence would require the Court to either override legislation that was duly promulgated by Congress, or apply a non-retroactive change to the mandatory minimum sentence.  For the reasons discussed above, applying the non-retroactive changes to Mr. Wilson's case, in defiance of Congress' determination that those changes should not be retroactive, would exceed the authority granted to the USSG and create a separation of powers issue with the judiciary.

There is, however, a portion of Mr. Wilson's sentence that was not based on a statutory mandate.  The sentence imposed for counts 1, 3-6, and 8-9  were determined by the court's acceptance of a Guideline range recommended by the Commission.   Reducing this portion of Mr. Wilson's sentence would not require a retroactive application of the changes to §924(c), and would not blur the boundary between legislative action and the authority of an agency within the judicial branch.

At his original sentencing Mr. Wilson was sentenced to a total of 262 months on Counts 1, 3-6, and 8-9.  The sentencing court calculated his guideline range and sentenced him to the lowest term within the guideline range.[25]   The 262 months was required to run consecutive to the

---

[25]   Mr. Wilson was sentenced pre-*Booker,* therefore at the time of his sentencing the Guidelines were considered to be mandatory. *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005).  *Booker* is not retroactive, and cannot be the basis for finding that extraordinary and compelling reasons exist for a sentence reduction. *See, e.g., United States v. Hunter*, 12 F.4th 555, 559, 565 (6th Cir. 2021)(citing *Humphress v. United States*, 398 F.3d 855, 860 (6th Cir. 2005)(*Booker* "does not apply retroactively in collateral proceedings"); *United States v. Manso-Zamora*, 991 F.3d 694, 696 (6th Cir. 2012)(bar on retroactive application of *Booker* applies in the context of §3582(c) motions).  However, courts must follow *Booker* when determining the appropriate term of imprisonment during re-sentencing. *See, e.g.,United States v. Wilson*, 827 Fed. Appx. 473, 481(6th Cir. 2020)("a district court commits plain error in re-sentencing when it does not account for the *Booker* holding, but instead continues to treat the original Guideline range as binding); *see also*, *United States v. Jarvis*, 999 F.3d 442, 445 (6th cir. 2021)(non-retroactive changes may be considered when weighing the §3553(a) factors at re-sentencing; *Hunter* at 563.

27

sentence under §924(c). (ECF #195-3).  The PSR does not reference any statutory minimum for counts 1, 3-6, and 8-9.  (ECF #144-1.  Therefore, it appears that the Court could impose any length of imprisonment below the statutory maximum without running afoul of any legislative directive.  In *Dean v. United States*, the United States Supreme Court specifically held that courts may take into account the lengthy mandatory minimum requirements of §924(c) when calculating the appropriate sentence for the predicate offense. 137 S. Ct. 1170 (2017)("[A] court imposing a sentence on one count of conviction [can] consider sentences imposed on other counts.").  In *Dean,* the Supreme Court found that although the predicate offenses resulted in a sentencing range of 84-105 months, because of the extraordinarily long mandatory minimum on the §924(c) counts, it could depart downward and impose a single day of imprisonment for each predicate offense.  "Nothing restricts the authority conferred on sentencing courts by §3553(a) and the related provisions to consider a sentence imposed under §924(c) when calculating a just sentence for the predicate count."  *Id.* at 1176-1177.  "Whether the sentence for the predicate offense is one day or one decade, a district court does not violate the terms of §924(c) so long as it imposes the mandatory minimum 'in addition to' the sentence for the [predicate] crime."  *Id.* at 1177.

Thus, if it were permissible after *McCall*, the Court could find that the extreme disparity between the mandatory minimum sentence under §924(c) at the time Mr. Wilson was sentenced, and how it would be applied today, constitutes an extraordinary and compelling reason warranting a sentence reduction.  This determination would be consistent with the applicable policy statements set forth by the USSC in USSG §1B1.13(b)(6).  Further, as detailed in Section B of this Memorandum Opinion, Mr. Wilson meets all the other criteria entitling him to relief under 18 U.S.C. §3582(c)(1)(A).  Therefore, but for the holding in *McCall* which remains

28

binding precedent, this Court could exercise its discretion to reduce Mr. Wilson's sentence, so long as the reduction does not take him below the statutory mandates in effect at the time he was sentenced.[26]  This means the Court could reduce his sentence on Counts 1, 3-6, and 8-9, from a sentence of 262  months down to as low as six days, or anything in between, as warranted by the §3553 factors. [27] This would result in a sentence of 120 months and six days up to 466 months, depending on which provision of §924(c) applies, and how the §3553 factors weigh out.

## CONCLUSION

For all the reasons set forth above, Mr. Wilson's Motion to Reduce Sentence Pursuant to 18 U.S.C. §3582(c)(1)(A)(i) is DENIED.  (ECF #195).  IT IS SO ORDERED.

_____
DONALD C. NUGENT
United States District Judge

DATE:  _April 10, 2024_

---

[26]  Under 198 U.S.C. §3582(c)(1) courts may grant relief  that reduces a sentence but does not result in the defendant's immediate release from prison. *See, United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020).

[27]  The Court of Appeals directed that Counts 8 and 9 should be merged for sentencing purposes.